# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDERSON STRAKER, | Civil No. 3:18-cv-1569 |
| Plaintiff | (Judge Mariani) |
| v. | |
| S. VALENCIK, et al., | |
| Defendants | |

## MEMORANDUM

## I. Background

Plaintiff, Anderson Straker, an inmate formerly confined in the United States Penitentiary, Allenwood, Pennsylvania,[1] initiated this action pursuant to 28 U.S.C. § 1331. (Doc. 1). The named Defendants are Captain Feltman, Warden Oddo, Lieutenant Tyson, SIS Valencik, and two unknown Defendants. *Id.*

Plaintiff states that "[o]n October 23, 2017, previous to the 10:00 p.m. count, [he] was violently attacked by 3 inmates with makeshift knives, and shortly thereafter placed in a segregated unit." (Doc. 1 at 9). He claims that "after two weeks of being in segregation, [he] asked why he was being punished where [he] was the victim" and "when not receiving a reply to [his] question, [he] asked vehemently for a grievance from members of [his] unit

---

[1] Plaintiff is currently housed in the United States Penitentiary, Florence, Colorado

1

team, and when being promised that one would be given to [him, he] reached out to the Warden in an inmate request slip." *Id.* Plaintiff claims that "no one would given [him] a grievance the entire time [he] was in Allenwood segregation and when they finally transferred [him, he] asked the people in Oklahoma for it and they told [him] that [he] had to wait until [he] reached [his] assigned prison facility" and "when making it in January, on the 31 of 2018, [he] pursued [his] first grievance." *Id.*

Plaintiff states that he "vigorously sought review at the Administrative level, and the filings were deemed untimely, where the above levels affirmed the prison institution's decision." *Id.*

Plaintiff filed the instant action on August 7, 2018, seeking damages for Defendants' failure to protect Plaintiff. *Id.*

Presently pending before the Court is Defendant's motion for summary judgment.[2] (Doc. 11). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will deny Defendants' motion.

---

[2] By Order dated April 4, 2019, the Court provided notice to the parties that Defendant's motion to dismiss and for summary judgment (Doc. 20) would be treated solely as a motion for summary judgment, and the Court placed the parties on notice that it may consider exhaustion in its role as fact finder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). (Doc. 26) (citing *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)). The Order also afforded the parties the opportunity to supplement the record with any additional supporting evidence relevant to exhaustion of administrative remedies. *Id.*

## II. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

"Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Statement of Undisputed Facts

The Bureau of Prisons (BOP) has an administrative remedy procedure with respect to inmate complaints, namely 28 C.F.R. § 542.10, *et seq*.

The BOP's Administrative Remedy Program allows an inmate to seek formal review

4

of an issue relating to any aspect of his confinement. 28 C.F.R. § 542.10(a). Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint to staff on an Informal Resolution Attempt form commonly referred to as a BP-8. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may then seek relief from the warden with the submission of a Request for Administrative Remedy, commonly referred to as a BP-9.[3] 28 C.F.R. § 542.14. The deadline for completion of the BP-8 and submission of the BP9 is twenty days from the date of the event which is the subject of the remedy. *Id.*

If the inmate is not satisfied with the warden's response, he has twenty days from the date of the response, to file a BP-10, Regional Administrative Remedy Appeal, with the Regional Director. 28 C.F.R. § 542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then file, within thirty days of the response, a Central Office Administrative Remedy Appeal or BP-11 with the BOP's General Counsel. 28 C.F.R. § 542.15(a). An inmate's appeal to the Central Office is the final administrative level of appeal in the BOP. 28 C.F.R. § 542.14(b).

On January 28, 2018, Plaintiff was issued an informal resolution form (BP-8). (Doc.

---

[3] An exception is made for appeals of discipline hearing officer decisions, which are raised directly to the Regional Director, rather than the warden, and then to the Central Office level. 28 C.F.R. § 542.15(d).

1 at 24, Informal Resolution Form).

On January 31, 2018, Plaintiff submitted his BP-8, stating the following:

> Previous to my custody at Florence (USP), three D.C. inmates entered my assigned cell at the Allenwood (USP) prison facility, with knives, where one of them locked me in putting pressure on my door, while the other two drew makeshift knives, and demanded that I open my locker. I attempted to run out and was stabbed first in the face and in my upper back when trying to make it to the door. My attackers would not allow me to leave, attempting to wrestle me to floor, hitting me with their fist, knees and elbows, and when they realized the resistance I was putting up, they exited my cell. This is when I came out and sought medical treatment, when the officer that was sitting in front of the horseshoe shaped desk noticed that I was badly bleeding from the face and back, pushed the distress button on his radio.
>
> It is uncertain as to how long the three had me trapped in my assigned cell, however, no prison guard showed up on the scene the entire time I was being assaulted. The guy that struck me with the first blow with the knife to my face had been released from the S.M.U. program for violent stabbing of another inmate and was known for violence through out the prison system, meaning he should not have been released to the prison institution without being monitored.
>
> The prison institution in charge of my custody failed to protect me, amounting to an Eighth Amendment violation as established in 18 U.S.C. §4042. See normally the Supreme Court holding set forth in Farmer v. Brennan.

*Id.* On February 20, 2018, Plaintiff's BP-8 was received and assigned to his Unit team.

*Id.*

On February 28, 2018, the Department issued the following response to Plaintiff's Informal Resolution:

> The tardiness of the response was not the fault of the inmate but an administrative error.
> Response: The above mentioned incident was not documented on your PD15.

6

>There is no documentation that this matter was brought before a reporting officer at any time.
>
>*Id.* On March 5, 2018, Plaintiff was issued a Request for Administrative Remedy

(BP-9). *Id.*

On March 21, 2018, Administrative Remedy No. 934490-F1 was received at the institution level. (Doc. 17-1 at 18). Plaintiff's remedy alleged the following:

>My assigned counselor's response maintained that there is no documentation of the incident in my P.D. 15.
>
>My counselor conducted a limited investigation refraining from requesting any information outside of the P.D. 15. Please find attached the lockup order and contact the S.I.S. department which will show and prove that I was in fact assaulted by two inmates with makeshift knives and robbed in the process and shortly thereafter placed in segregation.
>
>I want redress of my complaint and a better investigation.

(Doc. 1 at 18, Request for Administrative Remedy). That same date, Administrative Remedy No. 934490-F1 was rejected as untimely filed, with a notation that "institution and CCC requests (BP-09) must be received w/20 days of the event complained about." (Doc. 1 at 13, Rejection Notice). It is noted on the Rejection Notice that the Administrative Remedy was returned to Straker on March 22, 2018. *Id.*

On March 26, 2018, Plaintiff submitted Administrative Remedy Regional Appeal 934490-R1 to the BOP's Northcentral Regional Office,[4] arguing the following in support of

---

[4] The Court notes that some discrepancy exists with regard to the file date of Administrative Remedy Regional Appeal 934490-R1. The Administrative Remedy Generalized Retrieval

7

his appeal:

> There's a mistake in the time frame, my complaint was filed within the expected time any untimeliness of the filing was not within my control, my counselor attaches a memorandum in support.
>
> Previous to my custody here at USP Florence, I was assaulted by inmates and placed in segregation where no staff would give me a grievance and when received here, I proceeded with my complaint.
>
> Under 18 U.S.C. § 4042, and the 8th Amendment, I had a right to be protected from this type of assault.
>
> This matter is before you seeking redress where the prison institution in charge of my custody refrained from an actual investigation and failed to make a determination as to the issues of my complaint.
>
> The first amendment permits a complaint of this magnitude and prohibits by the prison institution stripped me of this right.
>
> I want an investigation regarding the incident previous to my custody here at Florence (USP).

(Doc. 1 at 27, Regional Administrative Remedy Appeal). By Memorandum to the Administrative Remedy Coordinator, dated March 26, 2018, Plaintiff's counselor, G. Grisenti, addressed the untimeliness of Plaintiff's Informal Resolution as follows:

> This Memorandum is in reference to Inmate Anderson Straker, registration no. 29067-026 and the BP-9 stating that he was assaulted at his previous institution. The untimeliness of the bp-9 was not the fault of the inmate but an administrative error.

---

reveals that Administrative Remedy Regional Appeal 934490-R1 was received by the BOP's Northcentral Regional Office on March 21, 2019. (Doc. 17-1 at 19). However, the actual appeal, which is attached as an exhibit to Plaintiff's complaint, is dated March 26, 2018. (*See* Doc. 1 at 27).

8

Should you have any questions do not hesitate.

Thank you for your time.

(Doc. 1 at 43, Memorandum).[5]

In Rejection Notice dated April 5, 2018, the North Central Regional Office rejected Plaintiff's appeal for Plaintiff's failure to provide a copy of his institution Administrative Remedy Request Form (BP-9) or a copy of the Warden's response (BP-9) with his appeal. (Doc. 1 at 26, Rejection Notice). The notice counseled Plaintiff that he must provide the Warden's response when filing at this level. *Id.*

On May 14, 2018, Central Office Administrative Remedy Appeal 934490-A1 was received in the Central Office. (Doc. 1 at 36, Central Office Administrative Remedy Appeal). Plaintiff raised the following issues:

> The Regional office has exceeded the time allotted for response, 542.18 of CFR directs a complainant to deem an untimely response as a denial, and I am now proceeding as follows:
>
>> The Regional office never returned a notice of receipt of my document of complaint.

---

[5] In his Declaration, Correctional Counselor Grisenti explains that the March 26, 2018 memo was "for purposes of explaining the lateness of [Plaintiff] being issued a BP 9 form after turning in the BP 8 (Informal Resolution Form which is required to complete before obtaining and filing a BP 9 Remedy at the Institution level)." He states that "Straker returned the BP 8, Informal Resolution on February 5, 2018" and "[Grisenti] issued the BP 9 administrative remedy form to him on March 5, 2018." (Doc. 17-1 at 22). Finally, Grisenti declares that "the memo was not provided as an excuse for untimely initiation of the administrative remedy process relating to the incident at USP Allenwood on October 23, 2017." *Id.*

> Not responding or providing acknowledgment invoked violations, stripping of due process rights set forth in Fifth Amendment.
>
> Please see attached as exhibit (A) a copy of the Regional office complaint, where I moved against my being assaulted by an inmate being stabbed several times with a makeshift knife.
>
> As reported three inmates entered my cell and commenced violent acts, repeatedly stabbing me until I managed to escape possible death or further injuries.
>
> My custodial caretakers failed to protect me from the violent act of others after they was told that one of the assailants was at another jail mistreating me while I was in a lockup cell and was spreading rumors, accusing me of being an informant which was clearly not true but placed me in danger.
>
> The custodial caretakers in charge of my custody caused me to be attacked and it could have been prevented had they taken the cautionary measures.

*Id.*

In Rejection Notice dated May 23, 2018, the Central Office rejected Plaintiff's

Administrative Remedy Appeal 934490-A1, based on the following:

> Concur with rationale of Regional Office and/or institution for rejection. Follow directions provided on prior rejection notices.
>
> It is noted you arrived at FLP[6] on 01-12-2018 but did not file your BP9 until 03-21-2018. If staff provide memo justifying delay you should resubmit at the institution level."

(Doc. 1 at 35, Rejection Notice).

On June 28, 2018, Plaintiff resubmitted Administrative Remedy Request 934490-F1

---

6   The United States Penitentiary in Florence, Colorado.

at the institution level, where it was rejected as untimely, stating that "institution and CCC requests (BP-09) must be received w/20 days of the event complained about." (Doc. 1 at 12, Rejection Notice). No further appeal was filed.

## IV. Discussion

Defendants seek dismissal of Straker's complaint based on his failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, ––– U.S. –––, –––, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust-irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. *Ross v. Blake*, ––– U.S. –––, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This

11

applies when the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' *Id.* at 1859-60." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. Notably, prison administration must also comply with the demands of the system. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365.

Applying this rule to Straker's case, it is clear from the record that he exhausted his

remedies as to the October 23, 2017 assault. The BOP's Administrative Remedy Program requires the Regional Director to respond to an appeal within 30 calendar days after the Request or Appeal is logged into the Administrative Remedy Index. *See* 28 C.F.R. § 542.18. According to the BOP's Administrative Remedy Generalized Retrieval, Administrative Remedy Regional Appeal 934490-R1 was received by the BOP's Northcentral Regional Office on March 21, 2018. Although the Regional Director issued a Rejection Notice on April 5, 2018, Plaintiff based his May 14, 2018 appeal to the Central Office on the fact that he failed to receive the Regional Director's response in the time specified in 28 C.F.R. § 542.18, and that the "Regional Office never returned a notice of receipt of [his] document of complaint." *Id*. Defendants do not refute this. Thus, at that moment, Straker obtained the right to come into federal court. *See Shifflett* at 366. As in *Shifflett*, this Court need not consider the contention that Straker was required under policy to continue his appeal through final review. *Id*. Straker's decision to continue working through the prison's internal system in good faith did not waive or negate his successful exhaustion of remedies as required by the PLRA. *Id*. Thus, applying the recent holding in *Shifflett* to the record before us, we are compelled to conclude that Straker timely appealed and that Plaintiff's failure to receive the Regional Director's response in a timely manner, rendered the BOP's administrative remedy procedure unavailable to the Plaintiff, and allowed him to come into federal court. *Shifflett*, 934 F.3d at 366.

## V. Conclusion

Based on the foregoing discussion, Defendant's motion for summary judgment with respect to exhaustion of administrative remedies will be denied. A separate Order shall issue.

Dated: February 12, 2020

Robert D. Mariani
United States District Judge