IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDERSON STRAKER, | Civil No. 3:18-cv-1569 |
| Plaintiff | (Judge Mariani) |
| v. | |
| S. VALENCIK, et al., | |
| Defendants | |

**MEMORANDUM**

I. **Background**

Plaintiff, Anderson Straker, an inmate formerly confined in the United States Penitentiary, Allenwood, Pennsylvania,[1] initiated this action pursuant to 28 U.S.C. § 1331. (Doc. 1). The named Defendants are Captain Feltman, Warden Oddo, Lieutenant Tyson, SIS Valencik, and two unknown Defendants.[2] *Id.*

Plaintiff states that "[o]n October 23, 2017, previous to the 10:00 p.m. count, [he] was

---

[1] Plaintiff was released from the Bureau of Prisons' custody on January 8, 2021. https://www.bop.gov/inmateloc/. He currently resides at GEO Group Inc., 3130 North Oakland Street, Aurora, Colorado.

[2] Because the unknown Defendants have never been identified in the above captioned action, which has been pending for more than two years, the Court dismisses these Defendants pursuant to Fed.R.Civ.P. 21, which provides that "on motion or on its own, the court may at any time, on just terms, add or drop a party." Fictitious names may be used until reasonable discovery permits the actual defendants to assume their places, but John and/or Jane Doe defendants must eventually be dismissed if discovery yields no identities. *See Parker v. United States,* 197 Fed. Appx. 171, 173 n.1 (3d Cir. 2006).

violently attacked by 3 inmates with makeshift knives, and shortly thereafter placed in a segregated unit." (Doc. 1 at 9). He claims that "after two weeks of being in segregation, [he] asked why he was being punished where [he] was the victim" and "when not receiving a reply to [his] question, [he] asked vehemently for a grievance from members of [his] unit team, and when being promised that one would be given to [him, he] reached out to the Warden in an inmate request slip." *Id*. Plaintiff claims that "no one would given [him] a grievance the entire time [he] was in Allenwood segregation and when they finally transferred [him, he] asked the people in Oklahoma for it and they told [him] that [he] had to wait until [he] reached [his] assigned prison facility" and "when making it in January, on the 31 of 2018, [he] pursued [his] first grievance." *Id*.

Plaintiff states that he "vigorously sought review at the Administrative level, and the filings were deemed untimely, where the above levels affirmed the prison institution's decision." *Id*.

Plaintiff filed the instant action on August 7, 2018, seeking damages for Defendants' failure to protect Plaintiff. *Id*. Specifically, Plaintiff alleges that he "expressed [to Defendant S.I.S. Valencik], a sudden danger of an inmate that had recently arrived to the prison facility which had an issue with [Plaintiff] at another prison facility, whom had threaten to do harm to Plaintiff, accusing him of being a snitch, and convincing others that this was going on with the Plaintiff." *Id*. He claims that Defendants, Warden Oddo and Captain

2

Felton permitted an inmate with a violent history on the prison yard. *Id*. He claims that Defendants Oddo and Lieutenant Tyson failed to train unspecified subordinate staff who did not properly respond to the attack. *Id*. Finally, he claims that Defendant Tyson unfairly punished him by placing him in the Special Housing Unit (SHU) and transferring him to a higher security prison. *Id*.

By Memorandum and Order dated February 12, 2020, Defendants' motion for summary judgment, based solely on Plaintiff's failure to exhaust administrative remedies, was denied. (Docs. 40, 41).

Presently before the Court is a motion to dismiss and, in the alternative, motion for summary judgment, filed on behalf of Defendants Feltman, Oddo and Tyson only. (Doc. 42). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will grant summary judgment in favor of Defendants Feltman, Oddo and Tyson.

## II. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. *See* Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be

dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."

See *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir.2003); *Youse v. Carlucci*, 867 F.Supp. 317, 318 (E.D.Pa.1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir.2007); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir.2004).

## III. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

6

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. Statement of Undisputed Facts[3]

On October 23, 2017, at approximately 8:55 p.m., staff at USP-Allenwood called for assistance due to a possible physical altercation after discovering Straker with blood covering his upper torso area. (Doc. 43 at 2). Two inmates were identified as suspects

---

[3] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." *See* M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' statement (Doc. 43) will be deemed admitted.

exiting Straker's cell on surveillance video. *Id.* The suspected inmates were later determined to have injuries consistent with an altercation. *Id.* The suspects and Straker were placed in the Special Housing Unit (SHU) on administrative detention pending the outcome of an investigation. *Id.* Lieutenant Marr signed the Administrative Detention Order for Straker and Defendant Tyson, also a lieutenant, delivered the signed Administrative Detention Order to Strake. *Id.*

Straker was confined in the SHU at USP Allenwood from October 23, 2017 through December 18, 2017. (Doc. 43 at 3).

## V. Bivens Standard

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court created an implied cause of action in Bivens when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980)

(holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855. As is relevant in the present case, the Supreme Court has also recognized an implied cause of action for failure to protect claims under the Eighth Amendment's deliberate indifference standard. *Bistrian v. Levi*, 912 F.3d 79, 90–91 (3d Cir. 2018).

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

## VI. Discussion

### A. Defendant Oddo

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of

his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989) ). Under the second approach, a supervisor "may be personally liable if he participated in violating [ ] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

To be legally liable under *Bivens*, therefore, a supervising official must play an "affirmative role" in the deprivation of the plaintiff's rights; the supervising official cannot be liable merely for a failure to act. *Brown v. Grabowski*, 922 F.2d 1097, 1119-20 (3rd Cir. 1990) (the failure to train and supervise, absent a showing of the official's direct involvement in the subordinates' unconstitutional actions, do not amount to a breach of a clearly established constitutional duty); *Freedman v. City of Allentown, PA*, 853 F.2d 1111, 1116-17 (3rd Cir. 1988); *Ramirez v. United States*, 998 F.Supp. 425, 432 (D.N.J. 1998)("Mere failure to train and supervise, absent proof of direct participation in the subordinates' unconstitutional conduct, does not form the basis for a constitutional claim.")

Plaintiff sues Defendant Oddo "in his individual capacity for his failure to protect the Plaintiff from such a heinous act where the color of federal law creates details and obligations for an active warden to make decisions to secure the safety and orderly functions of the prison institution for both staff and inmates." (Doc. 1 at 6). In addition, Plaintiff claims that "Defendant Oddo is being sued in his individual capacity for failure to properly train the two officers, and other custody officers where the inmate that attacked the Plaintiff and convinced others to stab the Plaintiff." *Id*.

Plaintiff, however, fails to provide any facts describing just how Defendant Warden Oddo allegedly violated his constitutional rights. Plaintiff fails to allege that this Defendant expressly directed the deprivation of his constitutional rights or created policies which left subordinates with no discretion other than to apply such policies, which in turn produced the alleged deprivation. Nor does Plaintiff allege facts to support the personal involvement of this Defendant, reciting only the conclusion that he was responsible for some aspect of the prison and violated Plaintiff's rights. In addition to being entirely conclusory, Plaintiff's failure to train averments confirm that his claims against Oddo are predicated solely on the theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676. Once again, Plaintiff has not pled any facts suggesting Defendant Oddo's direct involvement in a constitutional tort or implementation of a specific, identified custom, policy or practice that violated Plaintiff's constitutional rights.

Accordingly, the Court will disregard the Plaintiff's "naked assertions devoid of further

11

factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements," *Iqbal*, 556 U.S. at 678, and dismiss Plaintiff's claim against Defendant Oddo, without prejudice, for failure to state a claim. *See Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986) (finding that although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates).

### B. Defendant Tyson

Plaintiff states that Defendant Tyson "issued a lock up order, placing Plaintiff in segregation detention as punishment" even though "Tyson knew that the Plaintiff had "no sanctions or infractions" and had been "senselessly attacked by three inmates with sharpened makeshift knives." (Doc. 1 at 4-5). He claims that Tyson also had him transferred "to another prison institution where he now fears for his life on a daily basis, due to the consistent violence." *Id*.

The uncontroverted record before this Court demonstrates that it was, in fact, Lieutenant Marr who signed the October 23, 2017 Administrative Detention Order, which placed Plaintiff in the SHU at 9:45 p.m., pending an SIS investigation. (Doc. 43-1 at 12, Administrative Detention Order). Defendant Tyson is listed as the Officer who delivered the Order and witnessed Plaintiff's signature of same. *Id*. Consequently, Plaintiff's claim that Defendant Tyson ordered Plaintiff's placement in the SHU is belied by the record. Plaintiff

"concedes with the Defendants' position and does not wish to contest the dismissal of the complaint against Defendant, S. Tyson, based upon the premise that his role and/or conduct in relation to the instant matter was minimal." (Doc. 54 at 4, brief in opposition). Thus, Defendant Tyson is entitled to summary judgment.

However, regardless of the person responsible for Plaintiff's placement in the SHU, the United States Court of Appeals for the Third Circuit has recently held that no *Bivens* remedy extends to inmate claims for damages based on placement in punitive detention because those claims represent a new *Bivens* context and because special factors counsel hesitation. *See Bistrian v. Levi*, 912 F.3d 79, 94-95 (3d Cir. 2018). For the same reasoning set forth in *Bistrian*, this Court concludes that no *Bivens* remedy extends to Plaintiff's Fifth Amendment claims based on placement in administrative detention and his claim challenging his transfer to a more restrictive prison because "prison officials have – and indeed must have – the authority to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long." *Bistrian*, 912 F.3d at 94 (citing Sandin v. Conner, 515 U.S. 472, 482 (1995)). *See also Johnson v. Loatman*, Civ. No. 19-19174, 2020 WL 1444926, at *3, (D.N.J. Mar. 25, 2020) (stating the "Third Circuit held that special factors, especially separation of powers concerns, counsels against creating a new *Bivens* remedy for punitive detention within the prison context under the Fifth Amendment, an area best suited to the executive branch.") (citing *Bistrian*, 912 F.3d at 94-95).

"[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Liberty interests under the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted).

Plaintiff's "administrative placement in the SHU and reclassification to a higher security level does not implicate the Due Process Clause. The allegations, taken as true, do not lead to a plausible inference that his placement in the SHU imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' and, thus, he has no protected liberty interest." *Johnson v. Burris*, 339 F. App'x 129, 131 (3d Cir. 2009) (finding no due process or Eighth Amendment violation in 87-day SHU placement as the result of allegedly false disciplinary report) (quoting *Sandin*, 515 U.S. at 484); *Wilson v. Hogsten*, 269 Fed. App'x 193, 195 (3d Cir. 2008) (ruling federal inmate's SHU placement on administrative detention during ten month investigation and for ten weeks afterward was not a cognizable constitutional claim); *Griffin v. Vaugn*, 112 F.3d 703, 707-708 (3d Cir. 1997) (ruling that inmate's fifteen-month confinement in administrative detention did not implicate a liberty interest). Accordingly, Plaintiff herein has failed to state a *Bivens* claim regarding his SHU detention, and Defendants are entitled to judgment as a matter of law regarding

this claim.

Defendants are also entitled to judgment as a matter of law as to Plaintiff's allegation that he was unjustly transferred to USP-Florence. The Bureau of Prisons is tasked with determining the most suitable location for Plaintiff to serve his federal sentence. See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment ...."). It is well settled that an inmate "has no justifiable expectation that he will be incarcerated in any particular State." Olim v. Wakinekona, 461 U.S. 238, 245 (1983). "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." Meachum v. Fano, 427 U.S. 215, 225 (1976). "There is no reason to apply a different rule to the transfer of a prisoner from one location to another within the federal system." Burke v. Romine, 85 F. Appx. 274, 277 (3d Cir. 2003).

## C. Defendant Feltman

Plaintiff claims that Defendant Feltman "failed the Plaintiff when seeing the actions of the Assailant was consistently violent but permitted him to be released after negotiating a compromise which assured the assailant's release to the prison yard if he discontinued the violent conduct." (Doc. 1 at 6).

To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under

conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352 at 367 (3d Cir. 2012). "'[T]he prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id*. (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

Prison officials may escape liability by showing "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). In *Bistrian*, the detainee alleged in one incident that jail officials were deliberately indifferent when they placed the plaintiff inmate in a locked recreation pen with an inmate with a history of violent assaults against other inmates. The Third Circuit held that the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" was too speculative to state a claim of deliberate indifference by prison officials. *Bistrian*, 696 F.3d at 371. The Third Circuit recently reiterated this principle in *Zuniga v. Chamberlain*, 821 F. App'x 152 (3d Cir. 2020). There, the Third Circuit repeated that "an inmate with a history of violence might attack another inmate for an unknown reason" was too speculative to state a claim of deliberate indifference by prison officials. It found that the "generalized allegations" by Inmate Zuniga

regarding risk of harm were insufficient, even where Zuniga had reported a prior attack to an unnamed guard. *Id.* at n.8.

Defendants argue that Captain Feltman is entitled to judgment because the Plaintiff has failed to allege that Feltman knew of a serious risk of harm by the alleged assailant and that he disregarded that risk. The Court agrees. While Plaintiff alleges that Defendant Feltman may have been aware of the assailant's violence, there is no indication of that Feltman was aware of any threats of physical harm or violence toward Plaintiff that were disregarded. As such, Plaintiff's allegations are too speculative to state a deliberate indifference claim against Defendant Feltman. *See Bozochovic v. Verano*, 2019 WL 99089 at *3 (M.D. Pa. Feb. 26, 2019) (stating that "[t]he complaint does not allege facts that would indicate 'a sufficiently substantial danger' to Bozochovic existed prior to the assault. The complaint suggests that the assault was random, and was not the product of 'longstanding, pervasive, well-documented, or previously noted tensions between' Bozochovic and the other inmate."). Accordingly, the Court will grant summary judgment as to Plaintiff's Eighth Amendment failure to protect claim against Defendant Feltman.

## VII. Conclusion

Based on the foregoing discussion, Defendant's motion for summary judgment will be granted. A separate Order shall issue.

Dated: March 24, 2021

_____
Robert D. Mariani
United States District Judge